# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASKOLD KRUSHELNYCKY )<br>4001 Van Ness Street, N.W. )<br>Washington, DC 20016 )<br>_____ )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**FEDERAL COMMUNICATIONS COMMISSION** )<br>445 12th Street, S.W. )<br>Washington, D.C. 20554 )<br>)<br>Defendant. )<br>_____ ) | Civil Action<br>Docket No. _____<br><br>**COMPLAINT FOR**<br>**INJUNCTIVE RELIEF** |

1. Askold Krushelnycky ("Krushelnycky" or "Plaintiff") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, for injunctive and other appropriate relief to enforce his right to prompt disclosure of government agency records in the possession of the Federal Communications Commission ("FCC" or "Defendant").

## PARTIES

2. Askold Krushelnycky is a freelance journalist.

3. Defendant is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §1391(e).

## FACTUAL ALLEGATIONS

### First FOIA Request

6.      On September 1, 2017, Askold Krushelnycky filed a FOIA request with the FCC, in which he requested two categories of documents:

7.      The first category of documents concerns the recent Order and Consent Decree[1] ("Consent Decree") between Sinclair Broadcasting Group, Inc. ("Sinclair") and the FCC. The Consent Decree terminated an investigation into whether Sinclair violated its good faith negotiation obligation by engaging in prohibited joint negotiations on behalf of its Joint Sales Agreement ("JSA") and Local Marketing Agreement ("LMA") affiliates, including the closely related Cunningham Broadcasting Corporation ("Cunningham"). In the course of the investigation, the FCC's Media Bureau found that Sinclair represented numerous Non-Sinclair Stations in retransmission consent negotiations with multichannel video programming distributors ("MVPDs") between April 2, 2015 (the effective date of the FCC's rule implementing the statutory prohibition on joint negotiation) and November 30, 2015. Specifically, the Media Bureau found that "during this time period, Sinclair negotiated retransmission consent on behalf of, or coordinated negotiations with, a total of 36 Non-Sinclair Stations with which it had JSAs, LMAs, or SSAs, concurrently with its negotiation for retransmission consent of at least one Sinclair Station in the same local market." Id. In return for a payment of $9,495,000, the FCC agreed to terminate the investigation. Id.

8.      The Consent Decree also dismissed with prejudice all adversarial pleadings, complaints and petitions to deny the renewal of Sinclair television licenses based on the subject matter of the Consent Decree. It also granted the renewal of five of Sinclair's television stations.

---

[1] *Sinclair Broadcast Group, Inc.,* 31 FCC Rcd. 8576 (Media Bureau, released July 29, 2016).
[2] *See* Letter from Michael Perko, Chief, Office of Communications and Industry Information,

2

9. In his September 1, 2017 FOIA Request, Plaintiff is seeking documents concerning the Consent Decree. Specifically, Plaintiff requested copies of the following documents:

> 1. All documents reviewed or generated by the FCC. This includes, but is not limited to all documents provided by third parties;
>
> 2. All documents provided by Sinclair, Cunningham or any other Sinclair JSA or LMA affiliates to the FCC; and
>
> 3. All documents sent or provided by the FCC to Sinclair, Cunningham or any other Sinclair JSA or LMA affiliate.

10. The second category of documents Plaintiff is seeking concern non-public communications between Sinclair and the FCC:

> 1. From January 1, 2016 to the present all documents provided by Sinclair to the FCC.
>
> 2. From January 1, 2016 to the present all documents provided by the FCC to Sinclair.

11. On October 21, 2017, the Media Bureau submitted its Initial Response.[2] It produced 54 records, consisting of email communications between FCC personnel and employees or representatives of Sinclair. On January 16, 2018, the Media Bureau provided its Final Response,[3] stating that it "review[ed] approximately 70 additional records" and that

> The records consist of 41 email communications between Commission personnel and employees and/or representatives of Sinclair; 21 draft excerpts and versions of a consent decree and associated withdrawal letters; two compliance reports submitted by Sinclair pursuant to the Consent Decree; one confidential response to a Letter of Inquiry; and two application exhibits...

---

[2] *See* Letter from Michael Perko, Chief, Office of Communications and Industry Information, Media Bureau (October 21, 2017) (Initial Response).

[3] *See* Letter from Michael Perko, Chief, Office of Communications and Industry Information, Media Bureau (January 16, 2018) (Final Response).

The Media Bureau released only 10 records with redactions. It did not further identify the undisclosed records, but stated that the records were being withheld pursuant to Exemption 4, material containing commercial or financial information. It withheld one email address pursuant to Exemption 6.

12. On February 9, 2018, Plaintiff filed an Application for Review of the Media Bureau's decision. The FCC was required to respond to the Application for Review by March 9, 2018. The FCC has not responded.

13. Plaintiff has exhausted his administrative remedies.

### Second FOIA Request

14. In a discussion with Michael Perko, Chief, Office of Communications and Industry Information, Media Bureau, in November 2017, Mr. Perko stated to undersigned counsel that the reason for the delay in responding to the September 1, 2017 FOIA request was that there were outstanding approximately thirty FOIA requests regarding Sinclair. In response to Mr. Perko's statement, on December 5, 2017, Plaintiff filed a second FOIA request. The second FOIA request seeks copies of all FOIA requests filed with the FCC, from January 1, 2016 to the present that reference or seek information concerning Tribune Media Company and/or Sinclair, as well as all documents produced in response to these requests.

15. On January 19, 2018, the FCC notified Plaintiff's counsel that it was in receipt of Plaintiff's FOIA request and stated:

> Because of the volume of records potentially involved and the need to consult with multiple offices within the Commission, we are extending the date for responding to your request to February 2, 2018. *See* 47 C.F.R. §§ 0.461(g)(1)(i) and 0.461(g)(1)(ii). Thank you.

The FCC has made no response to Plaintiff's December 5, 2017 FOIA request.

16. Plaintiff has exhausted his administrative remedies.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act
### for Wrongful Withholding of Agency Records

17. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 16 above, inclusive.

18. Defendant has wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limits for the processing of FOIA requests and administrative appeals 5 U.S.C. §552(a)(6)(A)(i)(ii) and (C)(i); by failing to conduct a reasonable search for responsive records 5 U.S.C. §552(a)(3); by improperly asserting FOIA exemptions; by failing to specify the basis for its assertion of FOIA exemptions; and by failing to segregate exempt and non-exempt records. 5 U.S.C. §552(b).

19. Plaintiff is entitled to an order requiring the immediate processing and release of the requested documents. 5 U.S.C. § 552(a)(4)(B).

### The FCC Failed to Conduct an Adequate Search

20. In response to the September 1, 2017 request, the FCC's Media Bureau produced some documents, but most relevant documents remain unidentified and not produced. For example, concerning the requested Consent Decree documents, the FCC did not produce any of the documents that are known to exist and has only identified such documents as were made attachments to some email correspondence between Sinclair and the FCC. Thus, such documents as letters of inquiry and responses thereto, were neither identified nor produced.

21. According to a New York Times story, "Pai had met with Sinclair executives right before President Trump elevated him to chairman and corresponded with Sinclair officials

several times afterward…" See, *F.C.C. Watchdog Looks Into Changes That Benefited Sinclair* https://www.nytimes.com/2018/02/15/technology/fcc-sinclair-ajit-pai.html  Any correspondence between Sinclair officials and Chairman Pai is well within the scope of the September 1, 2017 FOIA request. Yet the FCC has not identified or produced these documents.

22. The FCC's continuing refusal to comply with FOIA adds fuel to the growing speculation that the FCC is working for the benefit of Sinclair rather then the public. Clearly, there is a close relationship between Sinclair and Chairman Pai. In its limited response to Plaintiff's FOIA request, the Media Bureau provided one email document, apparently from a source other than Chairman Pai, which had been sent to his personal email address. The Media Bureau in its response did not state that it searched for records in Chairman Pai's private email account responsive to the FOIA request. Significantly, it did not identify or produce the correspondence between Sinclair officials and Chairman Pai.

### The FCC Has Failed To Follow Its Own Rules And Regulation Thus Intentionally Concealing What Should be Public Information.

23. As stated in paragraph 8, herein, Sinclair had pending against it petitions to deny its license renewals. Filing a petition to deny a license renewal initiates a public regulatory process. 47 U.S.C. §309. The FCC has a statutory duty, if substantial issues are raised or if for any reason the grant of the application would be inconsistent with the public interest, to designate the application for hearing. Alternatively, if no substantial issues are raised the FCC is required "to issue a concise statement of the reasons for denying the petition, which statement shall dispose of all substantial issues raised by the petition." 47 U.S.C. §309 (d). In the case of Sinclair it did neither. It did not set the matter for hearing, but rather fined Sinclair. The FCC then simply denied the petitions, without stating its reasons. Regardless of the FCC's failure to follow the strictures of the Communications Act, any documents concerning the petitions to deny

and the FCC's basis for granting the renewal of licenses, properly belong in the public record and should have been produced to Plaintiff.

## REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Court:

    A.    Order Defendant to process immediately the requested records in their entirety and make copies available to Plaintiff;

    B.    Provide for expeditious proceedings in this action pursuant to 28 U.S.C. §1657(a);

    C.    Award Plaintiff its costs and reasonable attorneys fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

    D.    Grant such other relief as the Court may deem just and proper.

Respectfully submitted

By: ____/s/_____
Arthur V. Belendiuk
D.C. Bar No. 336768
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W., #301
Washington, D.C. 20016
(202) 363-4559

DATED: March 12, 2018